# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

ALEX NATAL

vs

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

Case Number: **2016 CA 004128 B**

Date: JUNE 6, 2016

[ ] One of the defendants is being sued in their official capacity.

Name: *(Please Print)*
WILLIAM R. COWDEN

Firm Name:
WILLIAM COWDEN LLC

Telephone No.:          Six digit Unified Bar No.:
202.642.0209; DC BAR #426301

Relationship to Lawsuit

[✓] Attorney for Plaintiff
[ ] Self (Pro Se)
[ ] Other:

TYPE OF CASE: [ ] Non-Jury      [✓] 6 Person Jury      [ ] 12 Person Jury
Demand: $ TBD                                      Other:

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____  Judge: _____  Calendar #: _____

Case No.: _____  Judge: _____  Calendar#: _____

---

**NATURE OF SUIT:**  *(Check One Box Only)*

**A. CONTRACTS**                          COLLECTION CASES

[ ] 01 Breach of Contract          [ ] 14 Under $25,000 Pltf. Grants Consent   [ ] 16 Under $25,000 Consent Denied
[ ] 02 Breach of Warranty          [ ] 17 OVER $25,000 Pltf. Grants Consent    [ ] 18 OVER $25,000 Consent Denied
[ ] 06 Negotiable Instrument       [ ] 27 Insurance/Subrogation                [ ] 26 Insurance/Subrogation
[ ] 07 Personal Property               Over $25,000 Pltf. Grants Consent           Over $25,000 Consent Denied
[ ] 13 Employment Discrimination   [ ] 07 Insurance/Subrogation                [ ] 34 Insurance/Subrogation
[ ] 15 Special Education Fees          Under $25,000 Pltf. Grants Consent          Under $25,000 Consent Denied
                                   [ ] 28 Motion to Confirm Arbitration
                                       Award (Collection Cases Only)

**B. PROPERTY TORTS**

[ ] 01 Automobile              [ ] 03 Destruction of Private Property   [ ] 05 Trespass
[ ] 02 Conversion              [ ] 04 Property Damage
[ ] 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

[ ] 01 Abuse of Process        [ ] 10 Invasion of Privacy        [✓] 17 Personal Injury- (Not Automobile,
[ ] 02 Alienation of Affection [ ] 11 Libel and Slander                 Not Malpractice)
[ ] 03 Assault and Battery     [ ] 12 Malicious Interference     [ ] 18 Wrongful Death (Not Malpractice)
[ ] 04 Automobile- Personal Injury [ ] 13 Malicious Prosecution   [ ] 19 Wrongful Eviction
[ ] 05 Deceit (Misrepresentation) [ ] 14 Malpractice Legal        [ ] 20 Friendly Suit
[ ] 06 False Accusation        [ ] 15 Malpractice Medical (Including Wrongful Death)  [ ] 21 Asbestos
[ ] 07 False Arrest            [ ] 16 Negligence- (Not Automobile,  [ ] 22 Toxic/Mass Torts
[ ] 08 Fraud                         Not Malpractice)              [ ] 23 Tobacco
                                                                  [ ] 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE      IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA) (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify, Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as Judgment [ D.C. Code § 2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code § 42-3301, et seq.)

- [ ] 21 Petition for Subpoena [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1) (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

June 6, 2016
Date

CV-496/ June 2015

**Filed**
**D.C. Superior Court**
**06/08/2016 25:33PM**
**Clerk of the Court**

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| ALEX NATAL,<br>6620 Boulevard View, Apt. A-1<br>Alexandria, VA 22307<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,<br>600 Fifth Street, N.W.<br>Washington, DC 20001-2693<br><br>Serve:  SUSAN SERRIAN<br>WMATA<br>600 Fifth Street, N.W.<br>Washington, DC 20001-2693<br><br>Defendant. | Case No. __2016 CA 004128 B__<br><br>Judge _____ |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Alex Natal, and for his Complaint against Defendant Washington Metropolitan Area Transit Authority, respectfully states as follows:

### NATURE OF CASE

This is an action for damages sustained by Plaintiff Alex Natal as the result of acts and omissions committed by Defendant Washington Metropolitan Area Transit Authority ("WMATA") while it was operating passenger trains on and about the Metro rail system on January 12, 2015 and doing business in the District of Columbia. On that date, Plaintiff was an occupant on a Metro passenger train that stranded passengers after stopping in a smoke-filled tunnel caused by an electrical fire near the L'Enfant Plaza Metro station. The fire was caused by Defendant's negligent act and/or omission committed in violation of duties owed to Plaintiff and resulting in damages to Plaintiff as

further set forth herein.

## JURISDICTION

1.     Jurisdiction of this Court is based upon D.C. Code § 11-921 *et seq.* and D.C. Code § 13-423, as the cause of action arise in the District of Columbia. Plaintiff seeks damages in excess of $25,000.00.

2.     This Court has personal jurisdiction over Defendant WMATA pursuant to D.C. Code §§ 13-422 and 13-423(a)(1). Defendant WMATA transacts business in the District of Columbia and caused Plaintiff a tortious injury in the District of Columbia by its act and/or omission.

## PARTIES

3.     Plaintiff Alex Natal ("Plaintiff" or "Mr. Natal") is now and at all relevant times has been an adult resident of the State of Virginia residing at the above-listed address.

4.     Upon information and belief, Defendant WMATA is a common carrier and a public transportation entity authorized to do and which does business in the District of Columbia. Defendant WMATA maintains its principle place of business in the District of Columbia at the above-listed address.

## FACTS

5.     Defendant WMATA was created in 1967 when Congress approved the Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"), D.C. Code §§ 9-1107.11 *et seq.*

6.     By its express terms, the WMATA Compact makes WMATA liable for its negligent acts and/or omissions and for those of its directors, officers, employees and/or agents when those acts/omissions are committed in the conduct of any proprietary function. D.C. Code § 9-1107.01(80). The provision of passenger transportation through the Metro rails system is a proprietary function pursuant to the WMATA Compact.

2

7.      On or about January 12, 2015, at approximately 3:15 p.m., WMATA Train 302 ("Train") was traveling on Metro Yellow Line toward Huntington, Virginia with several hundred passengers on board. The Train was owned and operated by Defendant WMATA.

8.      At approximately 3:15 p.m., after departing the L'Enfant Plaza Metro station, the Train encountered dense smoke in the tunnel and stopped approximately 800 feet from the L'Enfant Plaza Metro station. After stopping, the rear of the Train was approximately 386 feet from the south end of the L'Enfant Plaza Metro station platform.

9.      At all times relevant herein, smoke emanated from the tracks and/or subway tunnel and filled the Train. Passengers were forced to inhale and did inhale the smoke and its contents.

10.     Plaintiff Alex Natal was a passenger on the Train. He was located in the fifth car on the Yellow Line Train and was Defendant's passenger and a business invitee or simply an invitee.

11.     Upon information and belief, the smoke was caused by ty an electrical arcing event that took place on the Metro track approximately 1,100 feet ahead of where the Train encountered smoke. The defective conditions leading to the electrical arcing event and the electrical arcing event itself were not investigated by WMATA prior to the Train encountering the smoke.

12.     Upon information and belief, the electrical arcing event involved uncontained electrical current flowing between the Metro rail's power cable system and the steel wall or portion of the tunnel.

13.     Upon information and belief, the electrical connections associated with the power supply to the third rail of the Metro track were improperly constructed, installed, inspected, maintained, and/or otherwise repaired and/or otherwise defective, allowing contaminants and/or moisture and/or other unwarranted substances to enter and come into contact with the electrical components. This caused short circuiting which led to the electrical arcing event on January 12, 2015.

14.     The electrical arcing event, described by the National Transportation Safety Board

3

("NTSB") as "severe," caused significant damage to the tunnel near the L'Enfant Plaza Metro station. The NTSB investigated the causes of the January 12, 2015 Metro incident and published preliminary and supplemental findings. Its findings are available on its website at: http://www.ntsb.gov/investigations/accidentreports/pages/DCA15FR004_preliminary.aspx.

15.     After encountering the smoke, the Train became disabled in the tunnel, without power and illuminated only by emergency lighting.

16.     Passengers on the Train were instructed by WMATA employees to remain on the Train and to keep the Train doors closed. Passengers were told the Train would be returning to the L'Enfant Plaza station in short order. These instructions were given repeatedly to passengers on the Train by WMATA employees, servant, and/or agents.

17.     At approximately 3:16 p.m., WMATA Operations Control Center attempted to activate ventilation fans to evacuate and/or disperse the smoke from the section of the tunnel where the Train had stalled. The fans failed to accomplish this and actually directed smoke into the Train, exacerbating the density and volume of smoke to which passengers stranded on the Train were exposed

18.     Minutes later, at approximately 3:18 p.m., the District of Columbia Office of Unified Communications ("OUC") received a 9-1-1 call from a construction worker reporting smoke emanating from a Metro ventilation shaft roughly a half-mile south of the location of the stopped Train.

19.     At approximately 3:22 p.m., the OUC received a 9-1-1 call from a WMATA supervisor reporting heavy smoke in the L'Enfant Plaza Metro station. WMATA informed the fire department that there was "heavy smoke, passengers having trouble breathing."[1]

---

[1] The Washington Post. *Timeline confirms Metro riders' accounts of waiting for rescue on dark, smoke-filled train*, 01/15/2015, at: https://www.washingtonpost.com/local/trafficandcommuting/timeline-confirms-riders-accounts-of-long-wait-for-rescue-on-dark-smoke-filled-train/2015/01/14/9ed1237e-9c2f-11e4-bcfb-059ec7a93ddc_story.html.

20.    At approximately 3:28 p.m., the OUC dispatched a "Metro Station Box Alarm" which dispatched a fleet of District of Columbia Fire and Emergency Medical Services Department ("FEMS") personnel and equipment, including rescue squads, ladder trucks, life support units, and multiple Engine Companies.

21.    At approximately 3:31 p.m., the first FEMS responders arrived at L'Enfant Plaza Metro station pursuant to the OUC dispatch. Due to deficiencies in WMATA's signal-boosting and signal-relaying equipment, which was not compatible which FEMS standards, the FEMS responders had to wait approximately 13 minutes—until 3:44 p.m.—before moving into the tunnel because they were awaiting assurance from WMATA that power to the electrified third rail had been discontinued.

22.    OUC began receiving 9-1-1- calls from passengers aboard the Train at approximately 3:33 p.m. These calls continued for several minutes, with frantic and frightened passengers asking if help was on the way.

23.    Due to delays caused by WMATA, FEMS responders did not reach the Train until approximately 4:00 p.m., at which time they began evacuating Train passengers.

24.    One passenger suffered fatal injuries due to smoke inhalation and/or stress while aboard the Train. Plaintiff Alex Natal saw her body being removed from the Train while he was awaiting instructions for his own evacuation.

25.    For nearly an hour, Plaintiff Alex Natal was trapped in the Train, having been instructed not to leave it even while smoke increasingly entered it. He was eventually evacuated with the assistance of FEMS personnel. During this event, Plaintiff Alex Natal suffered severe difficulty breathing, respiratory distress, emotional distress, fear of death, terror, and other physical and emotional injuries.

26.    The NTSB began an investigation immediately following the January 12, 2015 incident.

On May 3, 2016, the NTSB held a public meeting to discuss the causes of, and solutions to, the

L'Enfant Plaza electrical arcing and Metro tunnel fire incident. Thereafter, it published its findings as

part of its preliminary report of its investigation into the January 12, 2015 electrical arcing event. The

NTSB's recent enumerated "findings" were as follows:

1. Electrical arc tracking was aided by the presence of contaminants and moisture on third rail cables and inside cable connector assemblies.

2. The Washington Metropolitan Area Transit Authority's third rail electrical power cable systems are susceptible to electrical arc tracking at improperly constructed power cable connector assemblies, which can lead to short circuits that can generate fire and smoke in tunnels.

3. The electrical short circuit initiated from either the consumed or the damaged cable connector assembly.

4. Intrusion of water at the electrical arcing site contributed to the severity of the accident.

5. The electrical arcing that resulted in the consumption of the cables that were resting against the tunnel wall was the origin of the smoke at the accident location.

6. Including leak inspections with WMATA tunnel structural inspections was not effective in identifying leaks.

7. The Washington Metropolitan Area Transit Authority tunnel repair program was not effective in mitigating recurring water intrusion like that found in the southbound Yellow Line tunnel.

8. Water intrusion into the Yellow Line tunnel south of L'Enfant Plaza predated the adjacent construction of the Wharf project, and therefore the construction was not a factor in the initiation of the electrical arcing.

9. The Washington Metropolitan Area Transit Authority did not have a written procedure for operating ventilation fans in response to smoke and fire events in a tunnel.

10. The Washington Metropolitan Area Transit Authority did not have effective training on the proper operation of tunnel ventilation fans.

11. The Washington Metropolitan Area Transit Authority failed to address the capacity problems of the ventilation system that were identified by engineering

studies.

12. Had the maintenance procedures in place at the time of the accident been followed correctly, the fault in the remote control of the fans could have been identified and corrected during the scheduled monthly inspection.

13. The conditions discovered after the accident—the inability to execute remote commands to the tunnel ventilation system, the tripped overload breakers, the defective remote terminal unit card, and the deficient automatic transfer switch, automatic voltage regulator, and motor control center—resulted from the Washington Metropolitan Area Transit Authority's inadequate maintenance.

14. The Washington Metropolitan Area Transit Authority did not comply with its ventilation fan inspection and maintenance procedures.

15. The Washington Metropolitan Area Transit Authority was not following its tunnel-washing and insulator-cleaning procedure.

16. At the time of the accident the Washington Metropolitan Area Transit Authority did not have a procedure for train operators to follow that would immediately shut down the ventilation systems on all the railcars in a train.

17. When the operator of train 302 shut down the ventilation system, only the ventilation system on the leading railcar shut down immediately, and the ventilation systems of all the other railcars remained operational.

18. The requirement for a train operator to receive permission from the Rail Operations Control Center to shut down the ventilation systems on a train, and the lack of a procedure for shutting down all the ventilation systems on a train from the lead railcar, contributed to the smoke entering the railcars in train 302.

19. The Rail Operations Control Center supervisor failed to ensure that the emergency procedures contained in Standard Operating Procedure #6 were followed by the control operators.

20. Had the Washington Metropolitan Area Transit Authority followed its standard operating procedures and stopped all trains at the first report of smoke, train 302 would not have been trapped in the smoke-filled tunnel.

21. The Washington Metropolitan Area Transit Authority put passengers at risk by routinely using trains with revenue passengers to investigate reports of smoke or fire.

22. The Rail Operations Control Center supervisor failed to ensure that all trains in both directions were stopped after smoke was reported, which was inconsistent with the Washington Metropolitan Area Transit Authority standard operating procedure.

23. Rail Operations Control Center supervisors and control operators were not proficient in executing emergency response procedures.

24. The Public Service Radio System communication problems were identified but not remediated before the accident.

25. The Washington Metropolitan Area Transit Authority's radio-testing procedure in place at the time of the accident was insufficient to identify Public Service Radio System communication problems in a timely manner.

26. Communications between the District of Columbia Fire and Emergency Medical Services Department (FEMS) liaison in the Rail Operations Control Center and the FEMS incident commander were delayed and inefficient.

27. The District of Columbia Office of Unified Communications' call processing delayed the emergency response to the accident.

28. Without line identification and direction signage at tunnel entrances and in tunnels, emergency response personnel may have difficulty navigating, which may delay their response efforts.

29. The lack of emergency lighting in the tunnel and the conduit and junction boxes on the tunnel wall above the walkway were safety hazards to passengers evacuating through the tunnel.

30. The lack of safety standards or regulation addressing emergency evacuation routes, including design and lighting, led to obstructed and poorly illuminated walkways at the Washington Metropolitan Area Transit Authority that increased the risk of injury to people evacuating train 302 in the Yellow Line tunnel.

31. The lack of formal training criteria for the battalion chief position may pose unnecessary risk with respect to incidents requiring the incident command process.

32. The incident commander had not been effectively trained in the skills and practices of the incident command process.

33. The incident commander should have elevated the incident response to a Unified Command structure.

34. In the initial phase of the emergency response, the incident commander did not take appropriate immediate action to provide emergency assistance to passengers on train 302.

35. Quarterly emergency response drills, particularly those in tunnels, would better

8

prepare Washington Metropolitan Area Transit Authority (WMATA) and local emergency response agencies to respond to emergencies on the WMATA system.

36. The District of Columbia Fire and Emergency Medical Services Department was unprepared to respond to a mass casualty event in the Washington Metropolitan Area Transit Authority's underground system.

37. The Washington Metropolitan Area Transit Authority missed the opportunity to improve its emergency response and procedures by not conducting an after-action review of its emergency response to the accident.

38. Despite its new authorities under the Fixing America's Surface Transportation Act, the Federal Transit Administration still lacks sufficient authority, expertise, and resources to assume temporary, direct safety oversight of rail transit agencies.

39. The structure of the Tri-State Oversight Committee (TOC) Executive Committee and its failure to effectively guide the TOC reduced the ability of the TOC to execute efficient and effective safety oversight of the Washington Metropolitan Area Transit Authority.

40. The projected establishment of the Metro Safety Commission will be delayed by the required legislation.

41. The Washington Metropolitan Area Transit Authority has not effectively used past safety investigations and studies to make lasting changes that become incorporated in its organizational safety culture.

42. Although the Washington Metropolitan Area Transit Authority has taken steps to improve its organizational safety since the 2009 Fort Totten accident, significant safety management deficiencies still exist within the organization.

43. Had the Washington Metropolitan Area Transit Authority effectively used its existing quality assurance program, it would have identified problems such as missing sealing sleeves and procedure non-compliance.

27.     While these findings remain subject to amendment by the NTSB, they accurately reflect what occurred on and failed to occur on and before January 12, 2015, and they further establish how WMATA's actions and inactions caused, contributed to and/or exacerbated the January 12, 2015 incident and injuries Plaintiff suffered there and then.

28.     At all times relevant herein, Defendant WMATA was the owner and operator of the

Metro rail system, including the L'Enfant Plaza Metro station, the Train, and all tracks, tunnels, and related infrastructure connecting the L'Enfant Plaza Metro station and the Pentagon Metro station (collectively "Metro rail system").

29.     At all times relevant herein, the Metro rail system was operated by WMATA employees, servants, and/or agents who were acting within the course and scope of their employment and/or agency.

30.     As a direct and proximate result of Defendant WMATA's negligence as described herein, Plaintiff Alex Natal suffered bodily injuries that have caused and will continue to cause physical pain and suffering. As a further direct and proximate result of Defendant WMATA's negligence as described herein, Plaintiff Alex Natal suffered and will continue to suffer fear, terror, anxiety and emotional distress. As a further direct and proximate result of Defendant WMATA's negligence as described herein, Plaintiff Alex Natal has incurred and will continue to incur medical, therapeutic and related costs and expenses.

31.     The injuries and damages to Plaintiff alleged herein were caused solely and proximately by Defendant WMATA's negligence without any contributory negligence of the part of Plaintiff.

## CAUSES OF ACTION

### COUNT I—Negligent Maintenance, Inspection, and Repair

32.     Plaintiff restates and re-alleges each of the above paragraphs of this Complaint as if fully set forth herein.

33.     At all times relevant herein, Defendant WMATA was responsible for the maintenance, inspection, and repair of the Metro rail system.

34.     At all times relevant herein, Defendant WMATA had a duty to exercise reasonable care to make its Metro rail system reasonably safe for the public through reasonable inspection,

maintenance, and repair of its Metro rail system.

35.     At all times relevant herein, Defendant WMATA's duty included, but was not limited

to, the following: (a) use of ordinary care to maintain the Metro rail system in a reasonably safe

condition for the use of passengers/invitees including Plaintiff, consistent with the invitation extended

by WMATA; (b) use of ordinary care to inspect the Metro rail system for defects which would interfere

with Plaintiff's use of the Metro rail system consistent with the invitation extended by WMATA; and (c)

use of ordinary care to repair defects in the Metro rail system which would interfere with Plaintiff's use

of the Metro rail system consistent with the invitation extended by WMATA.

36.     In breach of this duty, Defendant WMATA failed at all relevant times herein to

maintain the Metro rail system in a reasonably safe condition for business invitees/passengers such as

Plaintiff through reasonable inspection, maintenance, and/or repair. Defendant WMATA beached this

duty in a number of ways, including but not limited to the following: (a) by failing to use ordinary care

in the inspection, repair, and maintenance of the electrical connections associated with the power

supply to the third rail of the Metro track; (b) by failing to use ordinary care in ensuring that the

electrical system powering the third rail of the Metro track did not create an unreasonable risk of

electrical arcing; (c) by failing to use ordinary care in the inspection, repair, and maintenance of the

ventilation system in the section of the Metro tunnel between the L'Enfant Plaza Metro station and the

Pentagon Metro station; (d) by failing to use ordinary care to update, calibrate, inspect, repair and

maintain its radio and communication systems in accordance with FEMS requirements and/or in an

manner that would facilitate a reasonable timely emergency response to dangerous conditions in the

Metro rail system; (e) by failing to use ordinary care in to equip the Train and other infrastructure in the

Metro rail system with safety equipment to protect passengers in the event of reasonably foreseeable

emergencies and dangerous conditions in the Metrorail system; and (f) by failing to use ordinary care to

11

inspect the Metro rail system for conditions that could lead to electrical arcing and to repair any such conditions.

37.    As a direct and proximate result of Defendant WMATA's negligence, Plaintiff Alex Natal was caused to inhale smoke and its contents and suffered injuries and damages as set forth above without any contributory negligence of the part of Plaintiff Alex Natal.

### COUNT II—Negligent Creation of Defect

38.    Plaintiff restates and re-alleges each of the above paragraphs of this Complaint as if fully set forth herein.

39.    At an times relevant herein, Defendant WMATA had a duty to exercise reasonable care to ensure that did not create a dangerous defect in the Metro rail system which would interfere with Plaintiffs use of the Metro consistent with WMATA's invitation.

40.    In breach of that duty, Defendant WMATA, through act or omission, failed to exercise reasonable care to ensure that it did not create a dangerous defect in the Metro rail system and in fact did create a dangerous defect or defects in the Metro rail system. Defendant WMATA breached its duty in numerous ways, including but not limited to the following: (a) failing to use ordinary care to ensure that it did not create a condition, through act or omission, that would cause an unreasonable risk of electrical arcing; (b) failing to use ordinary care to ensure that its ventilation system in the tunnel between the L'Enfant Plaza Metro station and the Pentagon Metro station would act reasonably and as designed or intended in the event of an electrical  arcing event of other fire-causing concern such as that which took place on January 12, 2015; (c) failing to use ordinary care to properly train its agents, servants and and/or its employees in the proper activation use inspection repair, and maintenance of its ventilation system in the event of a fire or smoke emergency; and (d) failing to properly maintain and/or update its signal-boosting and signal-relaying equipment in accordance with FEMS standards.

41.     As a direct and proximate result of Defendant WMATA's negligence, Plaintiff Alex

Natal was caused to inhale smoke and its contents and suffered injuries and damages as set forth above

without any contributory negligence of the part of Plaintiff Alex Natal.

COUNT III---Negligent Response

42.     Plaintiff restates and re-alleges each of the above paragraphs of this Complaint as if

fully set forth herein.

43.     At all times relevant herein, Defendant WMATA had a duty to respond in a reasonable

and timely manner to the known dangerous condition in its Metro rail system in an effort to eliminate

or mitigate the injuries to Plaintiff Alex Natal, its business invitee and passenger.

44.     In breach of that duty, Defendant WMATA failed to respond in a reasonable fashion

and/or failed to take reasonable measures to allow FEMS personnel to respond in a timely matter

and/or restricted FEMS personnel's ability to respond in a timely matter to a known dangerous

condition in its Metro rail system, thereby causing or exacerbating Plaintiff's injuries and damages as

described herein. Defendant WMATA breached this duty in a number of ways, including but not

limited to the following: (a) by failing to ensure that the electricity to the third rail of the Metro track

was shut off in timely manner; (b) by filing to inform FEMS in a timely manner that electricity to the

third rail of the Metro track was shut off; (c) by failing to use ordinary care to update, calibrate, inspect,

repair, and maintain its radio and communication systems in accordance with FEMS requirements

and/or in a manner that would allow a reasonably timely emergency response to dangerous conditions

in the Metro rail system; (d) by failing to move the Train to a safe location in a timely manner after it

first encountered smoke in the tunnel; (e) by failing to use ordinary care to evacuate and/or facilitate the

evacuation of Train passengers; and (f) by failing to timely contact emergency services to alert them of a

dangerous condition present in the Metro rail system.

45.     As a direct and proximate result of Defendant WMATA's negligence, Plaintiff Alex

Natal was caused to inhale smoke and its contents and suffered injuries and damages as set forth above

without any contributory negligence of the part of Plaintiff Alex Natal.

### COUNT IV——Negligent Failure to Warn

46.     Plaintiff restates and re-alleges each of the above paragraphs of this Complaint as if

fully set forth herein.

47.     At all times relevant herein, Defendant WMATA had a duty to use ordinary care to

warn passengers/business invitees such as Plaintiff of any unsafe conditions present in the Metro rail

system of which Defendant WMATA had actual knowledge.

48.     At all times relevant herein, Defendant WMATA had a duty to use ordinary care to

warn passengers/business invitees such as Plaintiff of any unsafe conditions present in the Metro rail

system of which Defendant WMATA should have known through the use of ordinary care.

49.     At all times relevant herein, Defendant WMATA had a duty to use ordinary care to

warn passengers/business invitees such as Plaintiff of any unsafe conditions present in the Metro rail

system of which Defendant WMATA should have known through the use of ordinary care.

50.     At all times relevant herein, Defendant WMATA knew or should have known through

the use of ordinary café that electrical arcing was likely to occur and/or did occur in the Metro rail

system, that such electrical arcing would create smoke and fire, and that such smoke and fire would

create a dangerous condition to passengers.

51.     At all times relevant here, Defendant WMATA knew or should have known that the

electrical connections associated with the power supply to the third rail of the Metro track were

improperly inspected, maintained, and/or repaired and/or otherwise defective, allowing contaminants

and/or moisture and/or other substances to enter the electrical components, and that such condition

14

created the potential for electrical arcing events such as that which occurred on January 12, 2015.

52.    At all times relevant herein, Defendant WMATA knew of should have known that its ventilation systems in the tunnel between the L'Enfant Plaza Metro station and the Pentagon Metro station were improperly inspected, maintained, and/or repaired and/or otherwise defective and that such condition would fail to eliminate or mitigate passengers' inhalation of smoke or other contaminants as a result of an electrical arcing or other fire event such as that which occurred on January 12, 2015.

53.    At all At all times relevant herein, Defendant WMATA knew of should have known that its signal-boosting and signal relaying equipment was deficient and not compatible with FEMS standards, thereby causing a dangerous condition to passengers in the event of an emergency situation such as that which occurred on January 12, 2015.

54.    In breach of its duty, Defendant WMATA failed to warn Plaintiff Alex of a dangerous condition or conditions in its Metro rail system of which it knew or should have known through the use of ordinary care.

55.    As a direct and proximate result of Defendant WMATA's negligence, Plaintiff Alex Natal was caused to inhale smoke and its contents and suffered injuries and damages as set forth above without any contributory negligence of the part of Plaintiff Alex Natal.

WHEREFORE, Plaintiff Alex Natal respectfully requests a compensatory judgment against Defendant WMATA in an amount to be determined at trial by a jury, plus costs of suit, and such other further relief as this Court deems just and proper.

Dated 6/6/2016                              Respectfully submitted,

                                            WILLIAM COWDEN LLC

15



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

ALEX NATAL
_____
                        Plaintiff

                vs.                                    Case Number   **2016 CA 004128 B**

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
_____
                        Defendant

### SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

WILLIAM R. COWDEN
_____
Name of Plaintiff's Attorney

WILLIAM COWDEN LLC: 1750 K STREET, NW, SUITE 900           By   _____
                                                                              Deputy Clerk
Address
WASHINGTON, DC 20006

(202) 642-0209                                            Date          **06/07/2016**
_____
Telephone

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오           የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

Clerk of the Court

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





### TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

|                                          |
|------------------------------------------|
| _____ |

Demandante

contra

Número de Caso: _____

_____

Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

_____
Dirección

_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
                                      Subsecretario

Fecha _____

如需翻譯,請打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요.     የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ALEX NATAL

Vs.                                                    C.A. No.      2016 CA 004128 B

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
### <u>INITIAL ORDER AND ADDENDUM</u>

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge BRIAN F HOLEMAN
Date:  June 7, 2016
Initial Conference: 9:30 am, Friday, September 09, 2016
Location:  Courtroom 214
500 Indiana Avenue N.W.

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC.  Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation.  D.C. Code § 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office.    The  forms  to  be  used  for  early  mediation  reports  are  available  at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

William R. Cowden
DC Bar #426301
WILLIAM COWDEN LLC
1750 K Street, N.W., 9th Floor
Washington, DC 20006
(202) 862-4360
(888) 899-6053 (fax)
wcowden@cowdenllc.com

PLAINTIFF REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

William R. Cowden

16



Form CA 1-A: Notice and Acknowledgment for Service by Mail

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

ALEX NATAL
_____
        *Plaintiff(s)*

v.                                        Case No: 2016 CA 004128 B
                                          _____

WASHINGTON METROPLITAN AREA TRANSIT AUTHORITY
_____
        *Defendant(s)*

### NOTICE

To (insert name and address of the party to be served):
SUSAN SERRIAN
_____
WMATA
_____
600 FIFTH STREET, NW
_____
WASHINGTON, DC 20001-2693
_____

        The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

        You must sign and date the Acknowledgement (below). If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate next to your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate next to your signature your authority.

        If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

        If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

        This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on (insert date): JUNE 8. 2016 _____.

_____                        June 8, 2016
                                               _____
*Signature*                                    *Date of Signature*

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, AND INITIAL ORDER

        I (print name) Susan M. Serrian received a copy of the summons, complaint and initial order in the above captioned matter at (insert address): WMATA
        600 Fifth St, NW
        Washington, DC 20001
        6/14/16

_____        mgr legal svcs        _____
*Signature*                    *Relationship to Defendant/Authority*   *Date of Signature*
                               *to Receive Service*